**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE MOORE on behalf of himself and others similarly situated, | : : : | |
| Plaintiff, | : : | Case No. |
| v. | : : | |
| SWITCH ENERGY LLC, | : : | |
| Defendant. | : : / | |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff George Moore ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Switch Energy LLC ("Switch Energy") made repeated automated and pre-recorded telemarketing calls to the cellular telephone number of individuals, including the Plaintiff, to promote their services in violation of the TCPA. Calls were also made to residential telephone lines despite their presence on the National Do Not Call Registry, such as the Plaintiff's.

3. The Plaintiff never consented to receive the calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

4. A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff George Moore is a resident of Illinois in this District.

6. Defendant Switch Energy, LLC is a Delaware limited liability company with a principal place of business in Norwalk, CT. Switch Energy is registered to do business in Illinois with a registered agent of Corporate Creations Network, 350 S. Northwest Highway, #300, Park Ridge, IL 60068. Switch Energy places telemarketing calls into this District, as it did with the Plaintiff.

## Jurisdiction & Venue

7. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff Moore is a resident of this District, which is where he received the illegal telemarketing calls that are the subject of this putative class action lawsuit. The services that were promoted on those telemarketing calls were also provided in this District.

## The TCPA

9. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

2

The TCPA Prohibits Automated Telemarketing Calls

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA provides a private cause of action to persons who receive such calls. *See* 47 U.S.C. § 227(b)(3).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The National Do Not Call Registry

14. The TCPA also prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

The Growing Problem of Automated Telemarketing

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

16. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

17. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

18. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018),

https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Him*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-him-1530610203.

19. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

20. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited May 17, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

21. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited May 17, 2019).

**Illinois Automatic Telephone Dialers Act**

22. In Illinois, the Automatic Telephone Dialers Act ("ATDA") also prohibits an autodialer from being "operated in a manner that impedes the function of any caller ID when the telephone solicitor's service or equipment is capable of allowing the display of the solicitor's telephone number".815 ILCS 305/15(d).

23. The ATDA also prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party". 815 ILCS 305/30(b).

24. The ATDA provides for treble actual damages, statutory damages of $500 per violation, and costs and reasonable attorneys' fees. 815 ILCS 305/30(c).

25. Passage of the 2013 amendments to the ATDA providing for statutory damages, as invoked here, was unanimous in the Illinois legislature.

**Factual Allegations**

26. Switch Energy offers utility services in the Midwest, Mid-Atlantic and New England regions.

27. Switch Energy uses telemarketing to generate customers.

28. This telemarketing includes the use of automatic dialing equipment and pre-recorded messages.

29. Recipients of these calls, including Plaintiff, did not consent to receive them.

30. The Defendant uses this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone for autodialed calls and respond to the pre-recorded messages. Through this method, the Defendant shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Calls to Mr. Moore

31. The telephone numbers in question, (630) XXX-3205 is a cellular telephone number.

32. The telephone number is also a residential number.

33. It is not associated with any business of Mr. Moore.

34. The number has been on the National Do Not Call Registry for more than ten years prior to the receipt of the calls at issue.

35. All the calls that the Plaintiff answered from Switch Energy followed a common pattern.

6

36. The Plaintiff would answer the call.

37. There would be a noticeable pause with silence.

38. The following pre-recorded message would then play:

> Hello Commonwealth Edison electric customer. If you've not missed a payment in last two months, you are eligible to get lowest electric rate for 12 months. Press 1 on your phone right now and claim your saving.

39. The Plaintiff received these calls on October 10 and 21, 2019, and ignored them.

40. However, the calls continued.

41. To identify the telemarketer, the Plaintiff "pressed 1" in response to another pre-recorded message call on November 13, 2019.

42. The telemarketing representative that the Plaintiff spoke with said he was "Edward Blake" and "I'm calling from Switch Energy".

43. Following the call, the Plaintiff received a letter confirming Switch Energy's affiliation with the call.

44. All the Caller Identification numbers were manipulated by the Defendant to make them appear as numbers that were local to the Plaintiff.

45. However, when the Plaintiff called back the Caller Identification numbers, he heard a message that the "number dialed is not in service" or another indication that the number was not active.

46. Plaintiff and all members of the class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance. The calls also occupied Plaintiff's telephone line from legitimate communication.

7

47. Plaintiff has not provided Defendant with his prior express written consent to place telemarketing calls to him.

## Class Action Allegations

48. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of the following classes of persons or entities similarly situated throughout the United States.

49. The classes of persons Plaintiff proposes to represent are tentatively defined as:

DO NOT CALL REGISTRY CLASS

All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made at least two telephone solicitation calls during a 12 month period; (b) to a residential telephone number; (c) at any time in the period that begins four years before the date of filing this Complaint to trial.

PRE-RECORDED TCPA CLASS

All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to a cellular telephone number; (c) through the use of the same or similar pre-recorded message used to call the Plaintiff; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

IL ATDA SUBCLASS

All Illinois residents to whom: (a) Defendant and/or a third party acting on its behalf, made one or more non-emergency telephone calls; (b) to a cellular telephone number; (c) through the use of a prerecorded voice or a manipulated Caller ID; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

50. Excluded from the classes are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

51. The classes as defined above are identifiable through phone records and phone number databases.

52. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

53. Plaintiff is a member of the classes.

54. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

> (a) whether Defendant utilized pre-recorded messages to make its calls to members of the Pre-recorded TCPA Class;
>
> (b) whether Defendant systematically made multiple telephone calls to Plaintiff and members of the Do Not Call Registry Class;
>
> (c) whether Defendant made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;
>
> (d) whether Defendant's conduct constitutes violations of the TCPA; and
>
> (e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

55. Plaintiff's claims are typical of the claims of class members.

56. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes and is represented by counsel skilled and experienced in class actions, including TCPA class actions.

57. The actions of the Defendant are generally applicable to the classes as a whole and to Plaintiff.

58. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient

9

adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

59. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

### Legal Claims

### Count One:
### Violations of the TCPA's Do Not Call Provisions

60. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

61. Defendant violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) by initiating multiple solicitation calls within a 12-month period to residential telephone numbers despite their registration on the National Do Not Call Registry, without signed, written prior express invitation or permission.

62. The Defendant's violations were negligent and/or willful.

### Count Two:
### Violation of the TCPA's Automated Telemarketing Call Provisions

63. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

64. The Defendant violated the TCPA by (a) initiating telephone solicitations to the Plaintiff's cellular telephone number using a pre-recorded voice, or (b) by the fact that others made those calls on their behalf.

65. The Defendant's violations were negligent and/or willful.

66. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant's and/or their affiliates, agents, and/or other persons or entities

acting on Defendant's behalf from making automated calls, except for emergency purposes, to any cellular telephone number in the future.

## Count Three
### Violations of the ATDA, 815 ILCS 305/1 *et seq.*

67. Plaintiff realleges and incorporates the foregoing allegations as if set forth fully herein.

68. The ATDA prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party." 815 ILCS 305/30(b).

69. The ATDA also prohibits an autodialer from being "operated in a manner that impedes the function of any caller ID when the telephone solicitor's service or equipment is capable of allowing the display of the solicitor's telephone number". 815 ILCS 305/15(d).

70. Under the ATDA, an "autodialer" or "autodialer system" is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a). A "recorded message" refers to "any taped communication soliciting the sale of goods or services without live voice interaction." 815 ILCS 305/5(c). [1]

71. Defendant did not have the consent of Plaintiff or the other members of the IL ATDA Sub-Class to play a prerecorded message placed by an autodialer.

72. Nonetheless, Defendant called the phones of Plaintiff and the other members of the IL ATDA Sub-Class using a telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly

---

[1] The term "autodialer" or "autodialer system" does not include "device[s] associated with a burglar alarm system, voice message system or fire alarm system." 815 ILCS 305/5(a).

11

access the stored telephone numbers in order to automatically connect a telephone with a recorded message. No human being physically dialed each digit of Plaintiff's or the other IL ATDA Sub-Class members' phone numbers to connect their telephones with a recorded message.

73. Consequently, Defendant violated the ATDA by playing a prerecorded message placed by an autodialer during calls to the phones of Plaintiff and the other IL ATDA Sub-Class members, without such persons' consent, or by the fact that others did so on their behalf.

74. The Defendant also called the Plaintiff and IL ATDA Sub-Class members with manipulated Caller Identification functions.

75. As a result of Defendant's conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff and the other members of the IL ATDA Sub-Class were harmed and are each entitled to statutory damages of $500 per violation and three times any actual damages, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

## Relief Sought

For himself and all Class members, Plaintiff requests the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendant's and/or their affiliates', agents', and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendant and/or their affiliates, agents, and/or other related entities, as provided by law, from making automated calls, except for emergency purposes, to any cellular telephone number;

F. An award of damages to Plaintiff and the Classes, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorney,

*/s/ Anthony Paronich*
Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

13